Good morning. Chief Judge Thomas, members of the court, may it please the court. The pronunciation of Mr. Shimabukuro's name is a matter of some controversy actually in Hawaii. Shimabukuro is okay, Shimabukuro is okay, and your version was good enough for today. So this case presents a question of the proper application of the Pre-Protect Act version of Section 3583E of the Title 18, which is a statute that's directed to the court and requires the aggregation of prior imprisonment terms when determining how much the maximum term is that could be imposed on a defendant for violation of supervised release. And the second revocation in which, well, the third revocation, but in the second revocation, the district court sentenced Mr. Shimabukuro to one month, which was the time-served aspect of the case, and 50 weekends from Friday through Sunday morning of intermittent confinement. And the question is whether that 150 days or five months was required to be subtracted from the aggregate term which could be imposed, which was 36 months. So if you have 36 minus 18, which was the first revocation, minus one month, which is the second revocation, minus five months, which is also part of the second revocation, then the district court was constrained to a limit of 12 months. But the district court said no, that those 150 days didn't count. And the reason they didn't count was based upon, we think, the district court's mistaken reliance on Reno v. Corre, which addressed a completely different issue, which has to do with the credit for time served in or aggregation, not aggregation, in 3585. 3585 is actually directed to the Bureau of Prisons and how it administers a sentence. And so that's directed to the executive branch. 3583 is directed to the court. And — Can I just go back to this 150 days and ask you, am I right that that never should have been imposed, that that was erroneous when it was given? I think there's a pretty good argument that that was an illegal sentence, actually, because the intermittent confinement, at least currently, is limited to modifications in the first year of supervised release. But the district court concluded that because the statute which changed that had taken place or had been enacted after Mr. Shimabukuro had been sentenced and after his crime was complete, that she concluded that she had the power to do it. And it wasn't complained about. So although I think that is probably a fair argument, what we're dealing with here, I think, is whether, if those 150 days should or shouldn't have been imposed, they were still required to be aggregated. It's just odd because it does seem that it's moot at this point in terms of, I mean, he served those days, so there's nothing we can really do about that at this point. But the legal question it poses is now a little bit odd because we have this category of confinement that he served that arguably shouldn't really exist as a question that should be under this statute at all. Well, that's why this case is a rather narrow one, because it, first of all, has to do with Pre-Protect Act application. So it's only going to ever apply to people like Mr. Shimabukuro, whose offense was completed before 2003, and it then comes back on a revocation, and then comes back on an intermittent confinement aspect of revocation. It seems to me it's quite possible this might be the only case in history that ever presents this question. But fortunately, well, I think it's fortunate, that the Court, this Court has told us pretty much, I think, clearly in the Knight case how this should be decided. And Knight was actually a post-Protect Act case. But in order to construe what the change in the language in 3583 meant, post-Protect Act, the Court had to tell us what the Pre-Protect Act law was and what it did so clearly, which is it required aggregation of all terms of imprisonment. And so in the Knight case, this Court approvingly quoted the First Circuit. First, it noted that all the circuits were in agreement on this point, and then it noted that, as an example, it referred to the Tapio-Escalera case of the First Circuit, which makes clear that the cap, in this case 36 months, is to apply to the aggregate term of all imprisonments for release conditions violations. And so I think that they're going to be able to do that, and I don't think they're contesting that the statute required aggregation. They're just contesting whether this counts as something that should be aggregated, right? Okay. That's right. And so although they've gone a little further, that's what the district court said. But the question of whether Mr. Shimabukuro was actually in prison is answered by the fact that he was actually at FTC Honolulu, and that's a Federal prison. Right. But that gets to what should be aggregated. I mean, I can ask him to be sure, but I didn't understand their brief to be saying we don't think Knight was decided correctly, we don't think aggregation was required at all. I just think they're saying this didn't count as a prison term that should be aggregated. Right. They're saying that. But they're relying on Reno v. Correa, but that case drew a distinction between being in prison and not being in prison, because in that case, the question was, when you're in community confinement or, say, at a drug treatment program, under conditions of confinement that are equivalent to prison, should that count? And the answer was no, because there, under the Bail Reform Act, the person was released and then sent, say, to a drug treatment program and restricted, couldn't leave, couldn't do this, couldn't do that. Here, Mr. Shimabukuro was actually at the FTC, and I think possibly a thought experiment might answer the question. So he's there on Friday evening, Saturday, and Sunday. If he had escaped, would the government say, well, he can't charge him with escape because he's actually only on supervised release, he's not really a prisoner? Or, to take another one, there's a statute that makes it illegal to possess prison contraband when you're an inmate. And it forbids possession of all the usual things, but it also forbids possession of some things while you're an inmate that you definitely could possess when you're not an inmate, like United States currency or a cell phone. And so if Shimabukuro had walked in on Friday evening to serve the three days on a particular weekend and said to the FTC guard, you know what, I'm keeping my cell phone because I'm not really a prisoner, I'm on supervised release, or I'm keeping my money. Does anyone doubt that the institution could tell him, no, you're not, you're actually here, you're under our control, you're a prisoner, at least for these three days, and we're not going to let you do that. And by the way, it's a violation of law, so if you keep insisting on it, we'll see if you can be charged with a crime. So I think that that kind of ends the inquiry, I hope. I see that- Would you like to reserve? I think I would. Thank you. Thank you, counsel. Good morning, your honors, counsel. My name is Ronald Johnson. I'm an assistant United States attorney here on behalf of the United States. The issue here is really one of what a defendant can get credit for in serving time in some form of detention. Reno versus- He was in prison. He was in a BOP facility, that is correct. So why don't we count that as prison time? Because he wasn't there under an official order of detention. He wasn't accepted by the attorney general and under Reno versus Corey within the exclusive control of the Bureau of Prisons. So why does that matter under 3583? It matters because what defendant is asking for is credit for time served. Credit for time served- But it doesn't say time served. It says time in prison. Under an official detention order. Where does it say that in 3583? It doesn't say that in 3583. In 3583 and under the Knight case, what is stated is that the district court is required to subtract the aggregate length of any and all terms of revocation imprisonment. The government would urge the court to look at that term, revocation imprisonment. He is sent to serve a term of imprisonment upon revocation when the court issues a judgment and he is turned over to the custody of the attorney general and the Bureau of Prisons. So what's contemplated even in that statutory scheme is that he be credited for periods of official detention when he is the court relinquishes jurisdiction over him. So if a guard told him to go out in the yard, could he say, I have to call the judge and ask whether I really have to go out in the yard? No. At any halfway house, community correction center, or any other less restrictive condition of confinement, they have to follow the rules. And that is- But no one calls those in prison, do they? No one calls those settings prison. I mean, a halfway house, I've never heard anyone call it prison. Well, but we know- He was in a prison. Your Honor, if I may, we noted in our brief that the attorney general and the Bureau of Prisons has great latitude in structuring settings for rehabilitation, for work programs that are still custodial situations where they are under official orders of detention, but yet they're out in the community farming or working in an industry or doing something that is in a attorney general Bureau of Prisons sponsored program. As long as they're committed under an order of detention, as Corey said, that time counts. If they're released, then they are not under the exclusive control of the Bureau of Prisons, and that time does not count. And that is one of the key factors, because the United States believes that the controlling statute in this instance is 3585B, which basically says it has to be under official detention. The- But isn't that a statute about how the Bureau of Prisons calculates how it holds someone? I don't even know how a district judge imposing supervised release would use that statute. They'd have to call the BOP and say, what kind of credit would you give? How would you even do it? Well, what would happen is she did it in this case correctly, because what she did was she- Judge Mollway revoked the defendant on the first- his first term of supervision, revoked him. He got 18 months in prison. The 18 months were served, he came out. Bureau of Prisons determined from what day that started to what day that ended and what credit to give him under 3585B. Did she ever ask the Bureau of Prisons how they would count the 150 days? What she did was she referenced the Bureau of Prisons' policy statement. She went through their analysis, and Corey- But she did it, not the Bureau of Prisons. And doesn't 3585 talk about the Bureau of Prisons doing this? This is correct for credit for time served. What she did was she was determining what maximum term of imprisonment remained after the Bureau of Prisons had calculated both the term for the first revocation and the one-month credit on the second revocation where the intermittent confinement was given as a discretionary term. So the 18 and the 1 were definitively calculated by the Bureau of Prisons, and those were terms served by the defendant. The calculation of those terms is left to the Bureau of Prisons because it can't the calculation cannot begin until the defendant is surrendered to serve the term. So am I right, say we disagree with you and we think that this intermittent confinement counts. Am I right that you've never contested that the amount of intermittent confinement he served was 150 days? That is correct. He did serve 150 days of intermittent confinement. He is clearly the intermittent confinement under multiple analysis is a discretionary condition of supervised release. And under Corey, he is not under the- What does the judgment say? Because the judge would have revoked supervised release and then reimposed it. And so what exactly does the judgment say? Because you can impose, you can, as a condition of probation or supervised, you can give a sentence that says I'm going to sentence you for 6 months, but I mean, you're going to serve it on the weekends. But that's a sentence. And I know because I've done that. And that's just serving it over the course of 6 months. I mean, it's serving the 6 months, 180 days over the course of weekends. So what does the judgment say here that the judge did? Your Honor, I believe what she did was she gave him credit for time served, which was approximately one month that he spent prior to actually being revoked. And then as a discretionary condition of his supervised release term, placed him in intermittent confinement for the 150 days. But she sentenced him to 150 days, right? He was sentenced to 150 days. He was ordered to surrender himself to the Bureau of Prisons for service of intermittent confinement while on supervised release. Theoretically, why couldn't this go on forever? I mean, if he keeps getting revoked, she sentences him to intermittent confinement. And all of a sudden, the years start piling by as he's serving all this and he gets no credit for it. Possible, right? There is a limit, I believe, Your Honor, to the intermittent confinement up to one year within the statute, so. But you could do it 100 times, and he could serve the rest of his weekends of his life in prison. I don't believe that's correct. I believe it can be given one time from the revocation as a discretionary condition. So if he's revoked a second or third time, she couldn't do this? I do not believe, Your Honor, from my review of the records and the statutes, that it can be done multiple times. Where is the provision that tells us that? The- The provision that tells us it can only be done once? The intermittent confinement provision, normally it is given upon the first, upon a first revocation. Well, this was the second, so- It was, Your Honor. So where is the provision that tells us it can only be given once? Within the, Yeah, I'm not certain on that. I do believe that- Do you know if there is any other case that raises this question? Is this a one-off or not? I believe it is, Your Honor. When we did our research, we were unable to find any other circumstance. And you don't know of other people on supervised release in Hawaii who are reporting every weekend in this kind of situation? Not to my knowledge, Your Honor. And I don't believe there have been any multiple impositions of intermittent confinement on successive terms of supervised release, to my knowledge. In this particular instance, we don't believe that the court erred in making that determination that she could. Because she had not given intermittent confinement prior to this. She had revoked him for 18 months. The defendant- Am I right that if you're wrong about this, he's already been in prison for too long? His release date is currently set for August. I believe that was in the brief. And that's why the defense requested expedited hearing on this. And that's why we agreed he would be coming up for release. Okay, further questions? Thank you for your argument. Thank you. For your rebuttal. So, if we're right about this, Mr. Shimabukuro's release date has come and gone already. We're not quarreling about the second revocation. What we're saying is that the statute required the judge to aggregate the 150 days on the second revocation in determining what was the maximum sentence. On the third revocation, was it 17 months, which was imposed, or 12 months? It's what we contend. On the second revocation, to answer your question, I think it was Chief Judge Thomas. What the court said is that the defendant shall serve 150 days of intermittent confinement for 50 consecutive weekends at the Federal Detention Center, Honolulu, starting on July 31st, 2015, at 6 PM, and ending on Sunday, August 2nd, 2015, at 3 PM. This defendant shall thereafter report to the FDC, Federal Detention Center for Friday, and ending Sunday at 3 PM, and shall continue with the schedule for 50 consecutive weekends. Now, 150 days might not seem like a big thing, unless you're the person that has to serve it. But on intermittent confinement, there was nothing that constrained the court, as I would understand it, from saying, you know what, Mr. S, why don't you serve from Monday at 10 AM until Sunday at 3 PM, and that's intermittent confinement, and do that every week. Actually, since he's released a little bit, I guess it would be intermittent. But that's basically every day of the week, because you get credit for any part of a day or a day served. And it can't really be the case that the court could just do this, and then the court maybe could do it, but then it can't, on the next revocation, say, well, that didn't count. That was nothing. And the key, and the reason why this case is, we think, controlled by night, and not Reno versus Corey, is that the person in charge of Mr. Shimabukuro when he was at the FDC was the FDC warden and the adult correctional officers. Yes, the judge had some power to end it, or change it, or do something, but this case is really about, we think, 3583, which constrains what the court can do, and not 3585, which tells the executive branch what it's supposed to do in giving credit. If there's any questions, there's none. Thank you very much. Thank you, counsel. Thank you both for your arguments today. The case just arguably submitted for decision, and we will proceed with argument in the case of Zavala versus Rios.
judges: Thomas, Friedland, Olguin